UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BLAKE STEWARDSON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:18-CV-958 DRL-MGG |
| CASS COUNTY *et al.*, | |
| Defendants. | |

OPINION & ORDER

Law enforcement arrested Blake Stewardson for operating a vehicle while intoxicated and resisting law enforcement. At the jail, he physically struggled with law enforcement on several occasions, so officers tied him to a restraint chair. He alleges that law enforcement violated his constitutional rights. The remaining defendants—Sheriff Randy Pryor, Deputy Sheriff Christopher Titus, and Deputy Cameron Biggs—request summary judgment.[1] The court grants the motion in part.

FACTUAL BACKGROUND

On January 1, 2018, Logansport Police Officer Joseph Schlosser arrested Blake Stewardson for operating a vehicle while intoxicated and resisting law enforcement (ECF 103-1; ECF 103-2). He transported Mr. Stewardson, who was intoxicated and impaired, to the Cass County Jail (ECF 103-3 at 84, 91). Mr. Stewardson confronted jail staff there and made obscene comments to Deputy Sheriff Christopher Titus, who ordered him to face the wall in the entryway between two sets of sliding doors so that he could perform a pat-down search (ECF 103-5 at 78-80). While trying to put him against the wall, Mr. Stewardson resisted Deputy Titus (ECF 103-3 at 93; ECF 103-5 at 85). Deputy Titus threw

---

[1] Mr. Stewardson resolved his claims with the City of Logansport, Officer Joseph Schlosser, and the John Doe defendants (*see* ECF 132).

Mr. Stewardson into the wall,[2] causing a laceration over his left eye (ECF 103-3 at 85, 151; ECF 103-6 ¶¶ 3-4). Deputy Cameron Biggs was the officer in charge and observed this initial altercation, though he was still outside the entryway when it occurred (ECF 103-6 ¶ 2; 111-3 at 106-108 (describing firsthand knowledge of attack; *see also* ECF 103-8 Video at 12:47:58-12:48:22 AM).

Mr. Stewardson thereafter fell to the floor, and Deputies Titus and Biggs—Deputy Biggs had walked to the entryway by this time—piled on top of him (ECF 103-3 at 86). Mr. Stewardson physically resisted the officers, and they exchanged obscenities (ECF 103-3 at 96, 121-22). Mr. Stewardson says he was again thrown into the wall (ECF 103-3 at 123-24). The deputies didn't finish their search because of his resistance, so they took him to a padded cell (ECF 103-3 at 124; 103-5 at 91-92). They did so because he wasn't complying with orders, had an open wound, and could be concealing contraband (ECF 103-5 at 92-93; *see* Video at 12:48:22-12:49:35 AM).

Upon entering the cell, Deputy Titus leg swept Mr. Stewardson to the ground after he refused to get on his knees, with words exchanged (ECF 103-3 at 87; ECF 103-5 at 106-07; Video at 12:49:34-12:49:40 AM). Deputies Titus and Biggs restrained Mr. Stewardson at various pressure points; and once satisfied he was secured, Deputy Titus tried removing Mr. Stewardson's handcuffs (ECF 103-3 at 87). Though he was able to remove the handcuff from the right hand, he couldn't remove the handcuff from the left hand because the key broke (ECF 103-5 at 114). Fearing he might use the handcuff still around his left wrist as a weapon, Deputies Titus and Biggs (along with other officers) continued restraining Mr. Stewardson (ECF 103-5 at 114; *see* Video at 12:49:35-12:54:44 AM).

Mr. Stewardson, while continuously resisting law enforcement's efforts, tried pulling his right arm away from Deputy Biggs while kicking another officer (ECF 103-3 at 95-96). Deputy Biggs responded with a "common peroneal knee strike" on Mr. Stewardson (ECF 103-5 at 236; *see* Video at

---

[2] The parties dispute the nature of this physical altercation (*see* ECF 111-3 at 107). That said, the court views the evidence in the light most favorable to the non-moving party.

12:54:44-12:54:53 AM). Later, an officer brought bolt cutters to cut off the handcuff on Mr. Stewardson's left wrist (ECF 103-5 at 238). After the handcuffs were removed, Mr. Stewardson again resisted officers, so Deputy Biggs performed a second peroneal knee strike (Video at 1:15:20-1:15:40 AM). Throughout this period, Mr. Stewardson continued yelling threats and obscenities at the officers.

At some point, Mr. Stewardson said he was suicidal, so Deputy Biggs put him on suicide watch (ECF 103-5 at 119-20, 123-24). Arrestees on suicide watch are usually not allowed to have clothing because of the risk that their clothing could be swallowed to induce a stoppage of the air passageway or hang themselves (ECF 103-5 at 30). Perceiving this to be a risk, officers removed Mr. Stewardson's clothing while he continued resisting them, though they left him with a blanket (Video at 1:15:40-1:17:30 AM).

Once the officers left, Mr. Stewardson tried covering the surveillance camera with the blanket (Video at 1:18:22-1:18:47 AM). In response, Deputy Biggs decided Mr. Stewardson needed to be tied to the restraint chair to prevent him from blocking the camera or harming himself (ECF 103-5 at 141-42). Deputy Titus, acting under Deputy Biggs' authority as officer in charge, ordered Mr. Stewardson multiple times through the cell door to go to the back of the cell, but he refused to comply and threatened Deputy Titus in return (ECF 103-5 at 134). Deputy Titus then pinned Mr. Stewardson to the wall with the door so officers could enter the cell (ECF 103-5 at 133-38; Video at 1:19:13-1:19:17 AM). After entering, Deputy Titus ordered Mr. Stewardson to go to the back of the cell, but he refused (ECF 103-3 at 104). Accordingly, Deputy Titus "hip tossed" Mr. Stewardson to the ground (ECF 103-5 at 254), and Deputy Titus and other officers tied him to the restraint chair while he resisted (ECF 103-3 at 96-97). He was strapped naked, but they covered him with a blanket so that he was no longer exposed (Video at 1:19:13-1:21:57 AM).

After approximately 40 minutes, the officers released Mr. Stewardson from the restraint chair (ECF 103-6 ¶ 18) and left him with blankets (Video 2:01:52-2:15:02 AM). By then, the laceration above

his left eye had stopped bleeding (ECF 103-6 ¶ 18). Mr. Stewardson began digging at the laceration, and it started bleeding, forming a puddle of blood on the floor (ECF 103-6 ¶ 19; Video 2:16:23-2:19:00 AM). Deputy Biggs alerted the nurse, and he applied gauze to the bleeding (ECF 103-6 ¶¶ 20-26; Video 2:34:19-2:35:26 AM). While Deputy Biggs was on duty, Mr. Stewardson never made a medical complaint, requested to see a nurse, requested to go to the hospital, or claimed to have an unmet medical need (ECF 103-6 ¶ 28). Deputy Biggs didn't believe Mr. Stewardson needed to go to the hospital for medical treatment or that he needed additional medical attention on top of what the nurse provided (ECF 103-6 ¶ 20).

Mr. Stewardson sued multiple government defendants for violations of his constitutional rights. Defendants Sheriff Randy Pryor, Deputy Sheriff Christopher Titus, and Deputy Cameron Biggs moved for partial summary judgment (ECF 101). The City of Logansport had moved to dismiss claims against John Doe defendants (ECF 109) and the City of Logansport and Officer Joseph Schlosser moved for summary judgment for themselves (ECF 112), but these parties subsequently settled and the court mooted these motions accordingly (ECF 132). The Sheriff defendants' motion for summary judgment is the only dispositive motion pending.

## STANDARD

Several arguments have been mooted because Mr. Stewardson abandoned claims in his response.[3] The court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable

---

[3] The abandoned claims include counts 1-3 against Sheriff Pryor in his individual capacity; counts 3 against each defendant in their official capacity; counts 6-7 against each defendant in their individual capacity; count 8 against each defendant in their official capacity; and counts 9 and 10 as to all defendants.

inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Mr. Stewardson alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). He may bring a § 1983 claim only against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

A.   *The Court Denies Leave to File a Surreply.*

Before addressing the summary judgment motion's merits, the court addresses Mr. Stewardson's motion for leave to file a surreply (ECF 127). This motion was filed approximately five weeks after the remaining defendants filed their summary judgment reply. Mr. Stewardson doesn't explain the reason or good cause for a surreply or why it was necessary on this timeline, so the court won't reopen briefing. The court denies the motion.

      B.    *The Court Grants Summary Judgment on Counts 1 and 2 Against Sheriff Pryor in his Official Capacity.*

Mr. Stewardson claims that the Cass County Sheriff's Department had an unconstitutional policy or practice (count 1) and failed to train and supervise its employees (count 2). Mr. Stewardson abandoned these claims against Sheriff Pryor in his individual capacity but maintains them in his official capacity only.

Suits against officials in their official capacity are not suits against the officials themselves but against their office—here, the Cass County Sheriff's Department. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). A government entity is legally responsible for a constitutional violation only when its policies, practices, or customs caused the violation. *Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The policy or practice must be the "moving force" behind the constitutional violation; merely being a factor in the violation isn't enough. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). There are three instances when government entities are liable: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Mr. Stewardson doesn't argue that an express policy or person with final decision policymaking authority violated his constitutional rights. Instead, he says the Cass County Jail had a widespread unconstitutional practice or custom of stripping people naked and tying them to restraint chairs that they unlawfully used against him here, and that the Sheriff's Department failed to train and supervise employees. Mr. Stewardson's claim stumbles on two grounds: he doesn't show that the jail's practice of stripping people naked and tying them to a restraint chair is unconstitutional or that his rights were violated here. *See D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015) ("a

6

municipality cannot be found liable under *Monell* when there is no underlying constitutional violation by a municipal employee").

Correctional officials may devise "reasonable search policies" to maintain institutional security and preserve internal order and discipline. *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012); *see Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Because officers "are often forced to make split-second judgments," *Graham v. Connor*, 490 U.S. 386, 397 (1989), they retain "substantial discretion to devise reasonable solutions to the problems they face," *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015); *Florence*, 566 U.S. at 326; *see also Block v. Rutherford*, 468 U.S. 576, 585 (1984). For this reason, strip searches (including visual body cavity inspections) of all persons entering jail are constitutional, *see Florence*, 566 U.S. at 330, though there are some limits on how far a strip search may go, *Henry v. Hulett*, 969 F.3d 769, 778-79 (7th Cir. 2020). The court must assess the reasonableness of the actions in each circumstance, considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

Suicide risk often justifies stripping a detainee of clothing. *See Myers v. Cty. of Lake*, 30 F.3d 847, 850 (7th Cir. 1994) (suicidal "inmates may be deprived not only of belts and ties but also of pens, sheets, blankets, even clothing, for almost any object may be used to harm oneself"). Suicide is a "serious harm," and prison officials must "take reasonable preventative steps" when there is a "substantial risk that an inmate may attempt to take his own life." *Estate of Novack v. Cty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *see also Collignon v. Milwaukee Cty.*, 163 F.3d 982, 990-91 (7th Cir. 1998).

Law enforcement reasonably believed Mr. Stewardson was suicidal based on his own words to that effect (ECF 103-5 at 119-20). As Deputy Biggs recognized (ECF 103-5 at 30), suicidal detainees like Mr. Stewardson could use clothes to suffocate or hang themselves. Additionally, when law enforcement cannot properly search a detainee because he resists, as here, a risk exists that he is

7

carrying harmful tools in his clothing. Indeed, allowing Mr. Stewardson to have kept his clothes could have risked a different constitutional violation—failing to take adequate measures to prevent his suicide. The action here was reasonable.

Restraint chairs are also reasonable on detainees like Mr. Stewardson who resist law enforcement, impede law enforcement's ability to do its job, or risk committing suicide. *See Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012). Mr. Stewardson had tried to cover up the security camera with a blanket, which would have blocked law enforcement's view of the cell. Deputy Biggs reasonably decided Mr. Stewardson should be placed in the restraint chair to prevent him from taking these measures. He was removed after 40 minutes. Once released, he began digging at his laceration to the point of making it bleed and forming a puddle of blood on the floor—once again signifying the danger he posed to himself. While in the restraint chair, the officers covered him in a blanket so he wasn't needlessly exposed. These are reasonable precautions under the circumstances.

Moreover, each officer was trained and supervised regarding the use of force and adequately reviewed each use of force, including the instance here (ECF 103-7 ¶¶ 4-7, 14, 20). Even if Mr. Stewardson could show that Deputy Titus used excessive force here, this isolated incident wouldn't be sufficient to establish the government entity's liability. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003). Neither the acts of stripping detainees nor tying them to a restraint chair are unconstitutional as applied here or as a general practice or policy under similar circumstances. Accordingly, the court grants summary judgment on the remaining official capacity claims in counts 1 and 2.

   B. *The Court Grants Summary Judgment on Count 3 Against Deputy Biggs, Except to the Extent it Concerns a Failure to Intervene.*

Deputy Biggs moves for summary judgment on Mr. Stewardson's claim that Deputy Biggs used excessive force against him in violation of both the Fourth and Fourteenth Amendments with

both common peroneal knee strikes.[4] This circuit has recently specified that pretrial detainees' claims of excessive force, like Mr. Stewardson's, are governed by the Fourteenth Amendment, *see Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *petition for cert. filed*, though an earlier case said claims regarding confinement of a pretrial detainee who hasn't yet had a probable cause determination are governed by the Fourth Amendment, *see Williams v. Rodriguez*, 509 F.3d 392, 402-03 (7th Cir. 2007). Because *Mays* is this circuit's most recent pronouncement, the court follows it and applies the Fourteenth Amendment analysis, though the court notes that the result is the same under either the Fourth or Fourteenth Amendment analysis. Under the Fourteenth Amendment, the pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable, rather than demonstrate deliberate indifference." *Mays*, 974 F.3d at 819 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). The Fourth Amendment also carries the objective unreasonableness test for excessive force. *See Graham*, 490 U.S. at 388.

Qualified immunity further protects officers sued for money damages for alleged instances of excessive force, and Deputy Biggs asserts that protection here. Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and, second, that the right was clearly established at the time of the conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court may address either element first, *id.*, though this circuit has endorsed analyzing the second element first to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017).

Clearly established law must be "particularized" to the facts of a case, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), such that "existing precedent . . . place[s] the statutory or constitutional question beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Ashcroft*, 563 U.S. at 741). Mr.

---

[4] Sheriff Pryor also moved for summary judgment here, but Mr. Stewardson abandoned the claim against him in his response.

Stewardson cannot simply say an officer used excessive force and thereby overcome qualified immunity; indeed, this is but a general assertion not particularized to the facts of a case. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). He may instead point to "closely analogous cases" establishing the conduct as unlawful, or he may "demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001); *see also Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 359 (7th Cir. 2005).

Mr. Stewardson doesn't cite any closely analogous cases—indeed, he cites none—and the court finds none from its independent review. To the contrary, courts have held that knee strikes are often reasonable when confronted with an individual resisting law enforcement. *See Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002); *Pullen v. House*, 88 F. Supp.3d 927 (W.D. Wis. 2015). It is a use of force to subdue someone who is actively resisting without resorting to more severe measures of force. On this record, the knee strikes here weren't violating a constitutional right that was clearly established, particularly when the detainee was verbally aggressive, threatening, unpredictable, and unwilling to cooperate, nor were the knee strikes objectively unreasonable. His broken handcuff was a potential weapon. In the heat of these tense moments, a reasonable officer wouldn't believe that what Deputy Biggs did was obviously unconstitutional. He is entitled to qualified immunity.[5]

Mr. Stewardson pivots to say Deputy Biggs is liable for failing to intervene while Deputy Titus used excessive force. He didn't explicitly entitle such a claim in his complaint, but he needn't do so. He cannot amend his complaint in his summary judgment response. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). He needed only to provide adequate notice of his claims in his complaint. *See Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013). He did so here. He describes that Deputy Titus

---

[5] As a last-ditch effort, Mr. Stewardson says his resistance was justified because he was acting in self-defense, but he cites no evidence. This is mere speculation and without support, so insufficient to defeat summary judgment. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007).

slammed Mr. Stewardson's face against the wall while "police staff watched" (ECF 28 ¶ 32), and he then describes additional acts that occurred while the officers were present, including Deputy Biggs. He argues that Deputy Biggs should have intervened at some point before Deputy Titus used a hip toss. Deputy Biggs doesn't argue that he is entitled to qualified immunity on this claim.

Liability for failing to intervene arises when a police officer has "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail[s] to do so." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). A realistic opportunity to intervene may exist whenever an officer could have "called for a backup, called for help, or least cautioned [the officer] to stop." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This claim almost always implicates genuine disputes of material fact, *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), and here it does too.

Mr. Stewardson alleges three separate instances when Deputy Titus used excessive force, the first of which gave no time or opportunity for Deputy Biggs to intervene. Thereafter, particularly once on notice of his colleague's conduct, which for purposes of this motion hasn't been claimed to be reasonable, Deputy Biggs had the time and opportunity to intervene. As the officer in charge, he had the authority to do so. He observed the alleged instances of excessive force, and he had other officers available—including himself—who could have dealt with Mr. Stewardson rather than Deputy Titus. The events occurred over the course of several hours after all. A reasonable jury could find that Deputy Biggs failed to intervene as he should have. Accordingly, though the court grants summary judgment on the excessive force claim against Deputy Biggs, the court denies the motion on the failure to intervene claim in count 3.

C. *The Court Grants Summary Judgment on Counts 4 and 5 in all Respects.*

Each defendant moves for summary judgment on Mr. Stewardson's claims that they failed to provide medical care for the laceration on his head (count 4) and cruelly and unusually punished him in violation of the Eighth Amendment in failing to do so (count 5).

As a pretrial detainee, Mr. Stewardson's failure to provide medical care claims are governed by the Fourteenth Amendment instead of the Eighth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Accordingly, the court applies the "objective unreasonableness inquiry" instead of the "deliberate indifference" standard. *Id.* Indeed, a pretrial detainee like Mr. Stewardson cannot be punished at all, which the Eight Amendment allows for prisoners, much less can he be punished "maliciously and sadistically." *Kingsley*, 576 U.S. at 400-01. The Fourteenth Amendment presents a lower bar, so to the extent he alleges an Eighth Amendment violation, he necessarily also alleges a Fourteenth Amendment violation. *See Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) ("anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment"). Before recovering on this claim, though, a claimant must present "verifying medical evidence that the delay in medical care caused some degree of harm," which may come in the form of expert testimony or medical records. *Miranda*, 900 F.3d at 347; *see also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Mr. Stewardson fails to do that here.

Even if he had, his claim still fails, as both Deputies Titus and Biggs are entitled to qualified immunity on this claim. *See Ashcroft*, 563 U.S. at 735. Deputy Biggs reasonably believed Mr. Stewardson was not suffering from a serious brain injury or that he needed additional medical attention on top of what the nurse provided. Indeed, any injury Mr. Stewardson suffered was due in large part to his own actions. The laceration had stopped bleeding, yet he dug at it and caused it to bleed again. The laceration was only about an inch in length, and the amount of blood originally coming out of it was normal. Not every laceration presents a serious medical need. *See Davis v. Jones*, 936 F.2d 971, 972-73

(7th Cir. 1991) ("No reasonable person would believe that a one-inch cut presents such a risk unless the injured person is a hemophiliac."). He also continuously resisted law enforcement, delaying opportunities to provide him with medical care. He never asserted a medical complaint, requested to see a nurse, said he needed to go to the hospital, or claimed to have an unmet medical need. Mr. Stewardson continued to communicate verbally. Once Mr. Stewardson made the cut start bleeding again, Deputy Biggs applied gauze to the bleeding and alerted the nurse. Under these circumstances, neither Deputies Titus nor Biggs was "plainly incompetent" or "knowingly violate[d] the law," *see Mullenix*, 577 U.S. at 12, nor were their actions objectively unreasonable, *Miranda*, 900 F.3d at 352.

To the extent Mr. Stewardson intends to pursue this claim against Sheriff Pryor, it fails because there was no underlying violation, and Sheriff Pryor wasn't personally involved or condoned the violation. *See Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Accordingly, the court grants summary judgment on counts 4 and 5 in their entirety.

> D. *The Court Grants Summary Judgment on Counts 6, 7, and 8 Against Defendants in their Individual Capacities.*

Mr. Stewardson asserted claims for assault (count 6), battery (count 7), and intentional infliction of emotional distress (count 8). These state-based claims against government employees in their individual capacities are barred when the employee acted within the scope of his employment. Ind. Code § 34-13-3-5(b); *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). Mr. Stewardson pleaded that both Deputies Titus and Biggs were acting within the scope of their employment with the Cass County Sheriff's Department here (ECF 28 ¶ 124). He doesn't now argue they acted outside the scope of their employment; indeed, his response doesn't address this argument. With his own admission that they were acting within the scope of their employment, these individual capacity claims against Deputies Titus and Biggs are barred.

This leaves only claims against Sheriff Pryor in his official capacity, which is a suit against the Cass County Sheriff's Department. *See Will*, 491 U.S. at 71. Indiana recognizes vicarious liability for

government employers. *Cox v. Evansville Police Dept.*, 107 N.E.3d 453, 560 (Ind. 2018). Government entities are generally immune from liability under Indiana law, though, for losses resulting from the enforcement or failure to enforce a law. Ind. Code § 34-13-3-3(8). This doesn't apply, however, to assault, battery, and excessive force claims. *Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010). Accordingly, the Sheriff's Department may be liable if Mr. Stewardson proves that Deputy Titus committed one of these torts, so the court denies summary judgment for Sheriff Pryor in his official capacity as to assault and battery.

This immunity applies to "add on" claims such as intentional infliction of emotional distress, however, *see City of Anderson v. Weatherford*, 714 N.E.2d 181, 185-86 (Ind. Ct. App. 1999); *Chapman v. Indiana*, 2014 U.S. Dist. LEXIS 63593, 11-12 (N.D. Ind. May 8, 2014) (Simon, J.); *Ashcraft v. City of Crown Point*, 2013 U.S. Dist. LEXIS 158003, 17-19 (N.D. Ind. Nov. 5, 2013) (DeGuilio, J.), so the court grants summary judgment for Sheriff Pryor in his official capacity on that claim only.

E.  *Summary.*

There are pending discovery disputes (ECF 80, 82, 87, 90). That said, Mr. Stewardson hasn't shown by affidavit or declaration that he cannot present facts essential to justify his position here, nor does he argue so in his briefing. *See* Fed. R. Civ. P. 56(d); *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864-65 (7th Cir. 2019) (applying Rule 56(d) and holding that the "mere fact that discovery is incomplete is not enough to prevent summary judgment"). The pending discovery disputes don't impact the court's ruling, and those will be left for ruling by the magistrate judge to the extent this opinion doesn't moot any of them.

In summary, the court grants summary judgment for Sheriff Pryor in his official capacity on counts 1 and 2 alleging an unconstitutional practice or policy and failure to train and supervise employees, grants summary judgment on count 3 for Deputy Biggs in his individual capacity for excessive force though denies it for the failure to intervene claim, grants summary judgment for

defendants on counts 4 and 5 alleging inadequate medical care, grants summary judgment for defendants on counts 6, 7, and 8 alleging various state law claims, except as to the assault and battery claims against Sheriff Pryor in his official capacity, and grants summary judgment on counts 9 and 10.

For clarification, these claims remain for trial: excessive force against Deputy Titus and failure to intervene against Deputy Biggs in their individual capacities (count 3) and state law assault and battery claims against Sheriff Pryor in his official capacity (counts 6 and 7). The court grants summary judgment on all other claims, either as pursued in this briefing or abandoned. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

## CONCLUSION

The court DENIES Blake Stewardson's motion for leave to file a surreply (ECF 127) and GRANTS IN PART and DENIES IN PART Sheriff Randy Pryor's, Deputy Cameron Biggs', and Deputy Sheriff Christopher Titus' motion for summary judgment (ECF 101).

SO ORDERED.

March 9, 2021                                                      *s/ Damon R. Leichty*
                                                                                                    Judge, United States District Court