UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAKE STEWARDSON,

    Plaintiff,

v.

CASS COUNTY *et al.*,

    Defendant.

CAUSE NO. 3:18-CV-958 DRL-MGG

OPINION & ORDER

Earlier this year, the court granted and denied in part the defense's partial summary judgment motion leaving these claims for trial: excessive force against Deputy Christopher Titus, failure to intervene against Deputy Cameron Biggs, and state law assault and battery claims against Sheriff Randy Pryor in his official capacity. Deputy Biggs asks the court to reconsider. He says he lacked adequate notice of the failure to intervene claim and argues anew for qualified immunity.

The court has inherent power to revisit an interlocutory order. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985); *see also* Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007) (denial of summary judgment is interlocutory). Motions for reconsideration serve a limited function: without new evidence, to correct manifest errors of law or fact. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987).

A manifest error means a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). A motion for reconsideration may address circumstances when the court misunderstands a party, decides issues outside those presented by the parties, or makes

an error of apprehension (not of reasoning). *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A reconsideration motion is not a vehicle to rehash soundly rejected arguments. *See, e.g., Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Deputy Biggs merely rehashes an issue the court has soundly decided—that the first amended complaint articulated facts giving rise to a failure to intervene theory, one that remains reasonably for the jury to decide. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *see also Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) ("no duty to plead legal theories"). Deputy Biggs argues that each claim based on a "separate transaction or occurrence" must be stated in a separate count, *see* Fed. R. Civ. P. 10(b); but, to the extent this language makes sense here, the claims (excessive force and failure to intervene) are based on the same occurrence and operative facts.

Deputy Biggs argues too that the excessive force claim and failure to intervene claim are "legally distinct." But that alone doesn't translate into a straitjacket of separately labeled counts. "A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *accord Ryan v. Ill. Dept. of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). "Though legally distinct, the fate of [a] failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767 (7th Cir. 2005). Closely linked as theories, they may be closely linked in the factual allegations of a pleading.

Deputy Biggs cites *Guth v. Texas Co.*, 155 F.2d 563, 565-66 (7th Cir. 1946), which said that separate theories for negligence and account should've been stated in separate counts; but nonetheless the court of appeals—though agreeing with the district court that the negligence claim could not be maintained—specifically held that the district court erred by not considering the account theory that the pleading's facts supported and that the plaintiff pivoted to argue: "[I]ndeed we must, under the extremely liberal rules of the Federal Rules of Civil Procedure take any possible view of the facts which

2

would entitle the plaintiff to relief." *Id.* at 566. Far from helpful to Deputy Biggs, the case supports this court's prior ruling.

The focus today remains on the facts, not labels. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1986). "Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules. Putting each legal theory in a separate count is a throwback to code pleading[.]" *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). This remains true even in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft*, 556 U.S. 662. *See Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808-09 (7th Cir. 2014). "[T]here must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).

Mr. Stewardson's failure to intervene theory wasn't an amendment, much less an improper amendment at summary judgment. Even when a plaintiff raises a so-called new claim at summary judgment, the court must first consider "whether [the new claim] changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). If the new claim changes the complaint's factual theories, the court may construe it as an impermissible attempt to alter the complaint. *See id.* at 859; *Whitaker*, 772 F.3d at 808. On the other hand, if the new claim adds another legal theory based on facts already alleged in the complaint, the court should allow it to proceed "unless the changes unfairly harm the defendant or the case's development—for example, by making it more costly or difficult to defend the case, or by causing unreasonable delay." *Chessie Logistics*, 867 F.3d at 859 (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). Deputy Biggs offers no such reasons even if the court were to credit his view that this claim wasn't obvious. The court denies the motion to reconsider in this respect.

Deputy Biggs next says qualified immunity serves as a defense to the failure to intervene claim. He argued this defense vis-à-vis the excessive force claim at summary judgment, not the failure to intervene claim. Though often arguments not made are waived, qualified immunity proves a unique defense that is suitable to address today. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985); *see also Henry v. Hulett*, 969 F.3d 769, 786-87 (7th Cir. 2020); *Jogi v. Voges*, 480 F.3d 822, 836 (7th Cir. 2008); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989); *Alvarado v. Picur*, 859 F.2d 448, 451 n.3 (7th Cir. 1988).

Qualified immunity shields officials from liability unless a claimant proves two elements: first, that the official violated a constitutional right; and second, that right was clearly established at the time of the conduct. *Ashcroft*, 563 U.S. at 735. The court may address either element first, *id.*, though this circuit has endorsed analyzing the second element initially to prevent unnecessary litigation, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017).

Officials are shielded from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). A right is clearly established if it is sufficiently clear that a reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (internal quotations omitted). The law cautions against defining clearly established rights at a high level of generality. *Mullenix*, 136 S. Ct. at 308.

Mr. Stewardson alleges two instances when Deputy Biggs should've intervened to prevent Deputy Titus' excessive force—the first being when Deputy Titus tripped and slammed a handcuffed Mr. Stewardson to the floor and the second when Deputy Titus "hip-tossed" Mr. Stewardson

4

approximately thirty-one minutes later. Of course, the court construes the facts in Mr. Stewardson's favor because this argument harkens back to the summary judgment motion. "[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that excessive force was being used or that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Triable issues remain for the jury as to Deputy Titus' use of force—and tied to it Deputy Biggs' failure to intervene. *See Abdullahi*, 423 F.3d at 774. On this record, Deputy Biggs is entitled to qualified immunity only in part.

As to the Deputy Titus' second instance of excessive force (*i.e.*, tripping Mr. Stewardson to the ground) and Deputy Biggs' first opportunity to intervene, it is clearly established that officers have a duty to intervene when a realistic opportunity would prevent use of excessive force on handcuffed individuals, individuals who are not or have stopped resisting arrest, and even individuals resisting law enforcement. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Yang*, 37 F.3d at 285-86; *Byrd v. Brishke*, 466 F.2d 6, 9-11 (7th Cir. 1972); *Byrd v. Clarke*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir. 1983). Deputy Biggs may also be held to account for his failure to intervene in another officer's use of excessive force even while he too is using force. *See Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012).

Only moments before Deputy Titus tripped and slammed a handcuffed Mr. Stewardson onto the ground, Deputy Biggs witnessed him slam Mr. Stewardson into a wall. Deputy Biggs was present and witnessed both uses of excessive force. Though the court recognizes that the circumstances surrounding Mr. Stewardson falling to the ground are highly disputed, it must accept all facts and reasonable inferences in the light most favorable to the non-moving party—here, Mr. Stewardson. *See Bellaver v. Quanex, Corp.*, 200 F.3d 485, 491-492 (7th Cir. 2000).

Furthermore, construing the facts in the light most favorable to Mr. Stewardson, Deputy Titus' conduct would have been obvious as a violation to Deputy Biggs by mere observation that his fellow deputy was using excessive force. *See e.g., Abdullahi*, 423 F.3d at 775; *see also Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001) (clearly established law may also be shown by demonstrating "that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution."); *accord City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

Approximately thirty-one minutes after Deputy Titus tripped Mr. Stewardson onto the ground, he "hip-tossed" him. Deputy Biggs wasn't present. He didn't observe this use of force or its imminence. Mr. Stewardson asserts that Deputy Biggs failed to intervene to prevent such action after witnessing previous instances of excessive force, but no such right is clearly established. Mr. Stewardson doesn't cite any closely analogous cases, outside of a district court case, to establish that Deputy Biggs' failure to intervene to prevent excessive force separated by time, personal observation, and presence was clearly unlawful. *See Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) ("Neither an unpublished circuit court decision nor a district court decision can clearly establish the law because they are not authoritative as precedent and therefore do not establish the duties of nonparties."). In its independent review, the court also finds none. Per clearly established statutory and constitutional rights, a reasonable person, such as Deputy Biggs, wouldn't have known or understood that his failure to intervene to prevent a later "hip-toss"—separated by time, observation, and presence—was unlawful. *See Mullenix*, 136 S. Ct. at 308; *Pearson*, 555 U.S. at 231. Accordingly, Deputy Biggs is qualifiedly immune as to the claim of failure to intervene to prevent Deputy Titus' "hip-toss," but not as to the claim of failure to intervene to prevent Deputy Titus from tripping Mr. Stewardson.

On March 22, 2021, the court granted Mr. Stewardson's motion for leave to amend his complaint for the sole purpose of dismissing the City of Logansport, Joseph Schlosser, and John Doe. The same day, Mr. Stewardson filed his second amended complaint. It went beyond the scope of the

court's order and pleaded new facts and changed legal theories. Such unauthorized amendments to the pleading at this stage in the litigation aren't allowed, particularly when discovery has closed and summary judgment has been decided. At no time did Mr. Stewardson request leave to expand his claims or provide cause for doing so.

Accordingly, the court strikes the second amended complaint. Because his dismissal of three defendants wasn't a dismissal of the entire action, Rule 41(a) doesn't apply. *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015). Rule 15 instead authorizes a pleading's amendment that drops singular parties or claims, *id.* at 858, and the court should freely give leave when justice so requires, *see* Fed. R. Civ. P. 15. In addition, the defendants indicate that they have no objection to substituting the "Sheriff of Cass County" for the previously named Sheriff Randy Pryor, given the official capacity claims in counts 6 and 7. *See Sonner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988) ("An official-capacity suit is really just another way of suing the government."); Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

As written, the rules could prove terribly inefficient for counsel and clients if they were required to file an amended complaint, thereby triggering a new answer, just to perform the simple task of removing a claim or party that everyone agrees has turned out immaterial to the suit. This is no less true given the liberty taken after the court's last order and the other disagreements still pending in this case. Accordingly, the court deems the amendment—by deletion and dismissal of the City of Logansport, Joseph Schlosser, and John Doe (rather than by interlineation) and the substitution of the Sheriff of Cass County—effectuated through this order under Rules 15 and 25(d) without further need to file an amendment. The court strikes the second amended complaint.

Accordingly, the court DENIES IN PART Deputy Biggs' motion for reconsideration as it relates to notice and his qualified immunity for his failure to intervene to prevent the tripping of Mr. Stewardson, but GRANTS IN PART the motion as it relates Deputy Biggs' qualified immunity for

7

his failure to intervene to prevent the "hip-toss" [ECF 138]. The court also GRANTS the motion to strike [ECF 137], STRIKES the second amended complaint [ECF 136], and ORDERS the clerk to dismiss and terminate the City of Logansport, Joseph Schlosser, and John Doe and to substitute the Sheriff of Cass County for Sheriff Randy Pryor as a defendant.

    SO ORDERED.

October 14, 2021                                           *s/ Damon R. Leichty*
                                                         Judge, United States District Court