UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BLAKE STEWARDSON,

           Plaintiff,

v.                                            CAUSE NO. 3:18-cv-958 DRL

CASS COUNTY *et al.*,

           Defendants.

OPINION AND ORDER

Blake Stewardson and Defendants Sheriff of Cass County, Deputy Christopher Titus, and Deputy Cameron Biggs filed motions *in limine*. Mr. Stewardson filed five requests; the defendants filed eighteen. The court made several preliminary rulings at the final pretrial conference on March 14, 2023. The court memorializes these prior rulings now in full and decides those taken under advisement.

STANDARD

The court has broad discretion to rule on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Evidentiary rulings ordinarily should not be made until trial when the court can resolve admissibility issues in proper context. The court thus excludes evidence *in limine* only when it is "clearly inadmissible on all potential grounds." *United States v. Jackson*, 535 F. Supp.3d 809, 813 (N.D. Ind. 2021) (citation omitted). If admissible on one ground or another, the court will defer ruling on admissibility until trial. *See id.* Even when the court issues an order *in limine*, the order remains preliminary and subject to the court's revision at trial. *See Farfaras v. Citizens Bank & Trust*, 433 F.3d 558, 565 (7th Cir. 2006).

DISCUSSION

A.    *Agreed Requests.*

The parties agree on defense issues M (evidence of settlement negotiations) and R (comments about withholding evidence) and Mr. Stewardson's issues 2 (using the term "spit") and 3 (evidence of a

knife). Skilled and trustworthy trial counsel will adhere to their agreements. It is not the court's practice to enter an order *in limine* when the parties agree, though today the court elects to do so to aid counsel with a clear understanding of their obligations. The court thus grants the defense's motion on issues M and R and Mr. Stewardson's motion on issues 2 and 3.

  B. *Undisclosed Witnesses and Exhibits (Defense Issues A and B).*

The defense seeks to exclude 32 witnesses and two exhibits for failure to disclose under Rule 26. *See* Fed. R. Civ. P. 26(a), (e). Rule 26 requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Rule 26 also requires a party to supplement or amend disclosures and responses if he learns that the information disclosed, or the response, is "incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

When a party fails to comply with Rule 26(a), Rule 26(e), or other discovery, the party may not use an undisclosed witness at trial unless the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The following factors guide the substantial justification or harmlessness determination: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Outside of Kaden Stewardson, the list of 31 witnesses sought to be excluded is a carbon copy of the list produced to Mr. Stewardson in an interrogatory about Cass County Jail inmates who have been placed in a restraint chair. This list was produced in January 2020. Though Mr. Stewardson didn't know about these individuals until after his initial disclosures in 2019, there is no reason for the delay in supplementing his disclosures until February 2023 that he intended to call them, or any particular ones—until a little over a month before trial. This was neither justified nor harmless considering the sheer

quantity of witnesses and their relevance rather askance this case. *See* Fed. R. Evid. 401, 403; Fed. R. Civ. P. 37(c)(1); *David*, 324 F.3d at 857. That said, Mr. Stewardson views them as only rebuttal witnesses; and, if only for impeachment, they would work outside the initial disclosure obligations of Rule 26(a)(1). Nothing addresses the relevance of their testimony, so the court grants the motion *in limine* save for Mr. Stewardson's ability to present to the court, and outside the jury, a request to call such a witness for impeachment in rebuttal.

Turning to Kaden Stewardson (Mr. Stewardson's wife), the defense contends she was not disclosed as a witness until February 2023. Mr. Stewardson responds that Kaden Stewardson was only recently disclosed because she came into his life after discovery concluded (November 2020) and they were married after the appeal (November 2022). Though this doesn't explain why he didn't supplement his witness disclosures at least in November 2022, the lack of disclosure is harmless. *See Salgado*, 150 F.3d at 742. The defense admits it wouldn't have deposed her had they known about her earlier and declined the chance to depose her before trial based on the court's offer, so though the nondisclosure may have been neglectful there is no real prejudice to cure; nor will her presence at trial be disruptive. Accordingly, the court denies the motion as to Kaden Stewardson.

The defense argues for the exclusion of documents labeled "P14- Amended Affirmative Defenses" and "P16- Rule 34 Request for Inspection," contending they weren't disclosed during discovery or in compliance with the court's pretrial deadlines. There is no excuse for why Mr. Stewardson failed to disclose his intent to use these exhibits according to the court's pretrial deadline of February 14, 2023, nor will the court allow discovery issues to be tried before the jury. In truth, these documents have no business in a trial. *See* Fed. R. Evid. 401-403. The court grants the motion on issue B.

   B.  *Dispute Over Remaining Claims and Theories (Defense Issues C, D, E, F, and G).*

Defense issues C, D, E, F, and G stem from the dispute over what claims and theories Mr. Stewardson may present at trial. The defense asks the court to preclude evidence and argument about (1)

Deputy Biggs' alleged commission of assault and battery, (2) an incident when Mr. Stewardson was stripped naked and restrained to a chair, (3) claims that were not pleaded in the operative complaint, and (4) subjective intent or motive.

First, at summary judgment, the court ridded the case of any federal excessive force claim against Deputy Biggs, but without argument left unaddressed his actions within the context of state law battery that would give rise to official liability against the Cass County Sheriff. That said, Mr. Stewardson says he will not be pursuing any state law claim against Deputy Biggs in his official capacity, nor is this claim reflected in the final pretrial order. The court thus grants the motion as to issue C.

Second, the defense contends that Mr. Stewardson cannot argue that being stripped naked and placed in a restraint chair by Deputy Titus violated the Fourth Amendment and constituted battery, pointing to the court's summary judgment ruling. At summary judgment, the court disposed of Mr. Stewardson's *Monell* claim against the Sheriff of Cass County because "[n]either the acts of stripping detainees nor tying them to a restraint chair are unconstitutional as applied here or as a general practice or policy under similar circumstances" [ECF 133 at 8]. Mr. Stewardson seeks to present evidence of his naked restraint to support his battery claim against the Cass County Sheriff, and agrees not to argue this conduct was excessive force under the Fourth Amendment. The Cass County Sheriff didn't move for summary judgment on this state law claim. *See infra*. Its request today is an untimely and inappropriate summary judgment motion disguised as a motion *in limine*. *See Sellers Capital, LLC v. Wight*, 2017 U.S. Dist. LEXIS 111592, 15-17 (N.D. Ill. July 18, 2017). Mr. Stewardson may argue this conduct was battery under state law but not excessive force under the Fourth Amendment. Accordingly, the court grants in part and denies in part the motion as to issue D.

Third, the defense seeks to exclude evidence of a new theory or claim that it alleges was not pleaded in the complaint—namely that putting a naked and restrained Mr. Stewardson in a public hallway for punishment violated state or federal law. At the final pretrial conference, Mr. Stewardson conceded

4

this was not at issue and this theory would not be presented at trial. To be clear, Mr. Stewardson's claim, as an arrestee, falls within the purview of the Fourth Amendment—not the Eighth Amendment where an intent to punish is required. *Sanchez v. City of Chi.*, 700 F.3d 919, 926 n.3 (7th Cir. 2012). "Only reasonableness matters" to succeed on his Fourth Amendment excessive force claim. *Id.* The court grants the motion then as to issue E.

Fourth, the defense asks the court to exclude any evidence pertaining to Deputy Titus' subjective intent or motive—more specifically, that his conduct was motivated by a "romantic rivalry" with Mr. Stewardson over another person, Payge Vincent. The defense also asks to exclude evidence or argument that Deputies Titus and Biggs mocked the size of Mr. Stewardson's penis. Whether excessive force was used is an objective determination. *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) ("a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."); Seventh Circuit Civil Pattern Jury Instruction 7.10 ("you must not consider whether Defendant's intentions were good or bad").

Objective reasonableness is also the guidepost for a state law battery claim against law enforcement—without regard to subjective intent or motivation. *See O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000) (state tort liability governed by same standard as Fourth Amendment excessive force claim); *Tom v. Voida*, 654 N.E.2d 778, 780, 787 (Ind. Ct. App. 1995) (Indiana tort liability not permitted when law enforcement had not used excessive force); *South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. Ct. App. 1979) (answerable for battery when officer uses unreasonable or unnecessary force); *Walsh v. City of Michigan City*, 2021 U.S. Dist. LEXIS 88340, 9 (N.D. Ind. May 10, 2021) (same); *see also Damiani v. Allen*, 2018 U.S. Dist. LEXIS 145763, 57 (S.D. Ind. Aug. 28, 2018); *Fidler v. City of Indianapolis*, 428 F. Supp.2d 857 (S.D. Ind. 2006); *see generally Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind.

2010); *Burton v. State*, 978 N.E.2d 520, 525-26 (Ind. Ct. App. 2012); *Brooks v. Anderson Police Dep't*, 975 N.E.2d 395, 399 (Ind. Ct. App. 2012).

That said, evidence of intent, state of mind, motive, and ill will or spite, remains relevant to whether punitive damages should be awarded, *see Smith v. Wade*, 461 U.S. 30, 35, 56 (1983) (punitive damages recoverable under § 1983 if plaintiff makes a showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others"), "assessing the credibility of an officer's account of the circumstances that prompted the use of force," *Graham v. Connor*, 490 U.S. 386, 399 n.12 (1989), and an officer's "state of mind with respect to the bringing about of certain physical consequences in the world," *Kemp v. Fulton*, 27 F.4th 491, 496 (7th Cir. 2022). The last is especially relevant when the parties dispute whether some of Deputy Titus' uses of force were accidental or intentional. The evidence would not be inadmissible on all grounds, so the court denies the motion as to issues F and G.

    C.    *Unrelated Instances of Wrongdoing (Defense Issue H).*

Mr. Stewardson seeks to present evidence of other alleged instances of wrongdoing involving Deputy Titus, Deputy Biggs, and the Cass County Sheriff's Office: live testimony of other inmates, videos and reports pertaining to incidents with other inmates, reports concerning incidents of restraint chair use and use of force, and documents relating to other claims and lawsuits. The defense argues that other instances of alleged wrongdoing are not relevant to deciding today's claims, would confuse and mislead the jury, and would waste time; and the prejudice would outweigh any probative value. Mr. Stewardson argues the evidence would show lack of accident and may be used for rebuttal.

The court won't confuse the jury and use judicial resources conducting mini-trials within this trial. *See Anderson v. Dept. of Veterans Affairs*, 2018 U.S. Dist. LEXIS 8487, 5 (N.D. Ind. Jan. 18, 2018); *see also Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990) ("Exclusion of evidence under Rule 403 is . . . important to avoid significant litigation on issues that are collateral to those required to be tried."). Whatever little probative value—and fundamentally there is none—the risk of jury confusion, undue delay, and the waste

of time substantially outweigh it. *See* Fed. R. Evid. 403. There are no *Monell* claims left, so this evidence isn't relevant to the controversies the jury must decide. *See* Fed. R. Evid. 401-402.

Such evidence may be admitted only in conformity with the reasons outlined in Rule 404, such as "absence of mistake[] or lack of accident," Fed. R. Evid. 404(b)(2), but Mr. Stewardson hasn't explained how the defendants' previous conduct supports these reasons and their relevance today. Mr. Stewardson has reserved calling these witnesses for rebuttal, which the court will address within the context of trial and outside the jury's presence. The court grants the motion as to this issue otherwise.

        D.      *Evidence that Deputies Titus and Biggs Violated Written Policy (Defense Issue I).*

The defense seeks to exclude evidence that the deputies violated a Cass County Sheriff's Office written policy or rule. Mr. Stewardson doesn't point to the exact policy he seeks to introduce. The court can surmise from his summary judgment response that he may assert that aspects of his naked restraint to a chair violated jail policy. Mr. Stewardson conceded, and the court precluded him from arguing this was a constitutional violation. He still argues this as a battery claim against the Cass County Sheriff.

Objective reasonableness without regard to subjective intent or motivation—the same as a Fourth Amendment claim—is the standard for Indiana state law battery at the hands of or committed by law enforcement. *See supra.* A "violation of police regulations or even state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chi.*, 472 F.3d 444, 454-55 (7th Cir. 2006). "[I]f confronted with the question of whether police manuals, guidelines or general orders are reliable gauges of the reasonableness of an officer's use of force, the [court] would reach the same conclusion" that it has before—such guidelines are not reliable gauges of reasonableness. *Id.* at 455; *see also Whren v. United States*, 517 U.S. 806, 815 (1996) (affirming district court's exclusion of such evidence in an order *in limine*).

"Despite its strong language, *Thompson* should not be understood as establishing a rule that evidence of police policy or procedure will *never* be relevant to the objective-reasonableness inquiry."

7

*United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017); *see Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). The contexts in *Brown* and *Mays*, where law enforcement or procedure was relevant, are inapplicable here. In *Brown*, the court held that expert testimony concerning law enforcement policy is not "categorically barred" because "even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field. In those instances, an expert's specialized knowledge can 'help the trier of fact to understand the evidence or to determine a fact in issue,' as Rule 702 requires." *Brown*, 871 F.3d at 537 (quoting Fed. R. Evid. 702(a)). Mr. Stewardson isn't seeking to introduce expert testimony about law enforcement practices or protocols nor does this case present "something peculiar about law enforcement (*e.g.*, the tools they use or the circumstances they face) [that] informs the issues to be decided by the finder of fact." *Id.* at 538. "The jury's common experience will suffice, for example, when 'police use[] their bare hands in making an arrest, the most primitive form of force.'" *Id.* (quoting *Florek v. Vill. of Mundelein*, 649 F.3d 594, 602 (7th Cir. 2011)). Additionally, in *Mays*, a violation of the prison's rules was relevant evidence on which a jury could have relied to conclude the searches were done "with an intent to harass." *Mays*, 575 F.3d at 650. The prison's rules were relevant to an Eighth Amendment deliberate indifference claim, requiring an objective and subjective inquiry. *Id.* These cases aren't applicable today, so law enforcement policy and procedure aren't relevant to the constitutional or battery claim. *See also Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) ("the jury needed no help in deciding whether [the officer] was acting reasonably").

Last, Mr. Stewardson asserts the restraint chair policy violations are relevant to determine punitive damages. However, the battery claim carrying this theory is only against the Cass County Sheriff, which cannot be liable for punitive damages. *See* Ind. Code. § 34-13-3-4. Mr. Stewardson has identified no other policy he believes was violated, nor argued its relevancy and admissibility. Accordingly, the court grants the motion as to defense issue I.

   E. *Non-Expert Testimony of Physical, Mental, and Emotional Injury (Defense Issues J and K, and Plaintiff's Issue 5).*

Mr. Stewardson seeks to testify and call other lay witnesses (friends and family) to testify about his physical, mental, and emotional injuries. The defense asks the court to exclude any evidence that the conduct at issue caused Mr. Stewardson to suffer a concussion, a brain injury, and mental and emotional harm. They further argue that under Federal Rules of Evidence 403, 701, and 702 this testimony is beyond his, or their, knowledge and qualifications.

Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony to the extent that it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Therefore, a lay witness may testify about his "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas v. City of Chi.*, 691 F. Supp.2d 811, 821 (N.D. Ill. 2010). "No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). He "cannot, however, offer medical opinions that require scientific, technical, or other specialized knowledge," "give any complex medical diagnoses or opine on any long term medical conditions." *Christmas,* 691 F. Supp.2d at 821.

Mr. Stewardson may testify about his own perception of his physical and mental health before and after the incident. This includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson*, 589 F.3d at 893 (allowing plaintiff to describe pain resulting from attack where there is "no [] complicated question of medical causation"). Similarly, other lay witnesses may testify as to their observations regarding Mr. Stewardson's alleged physical, mental, and emotional injuries or anguish. *See Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565-66 (7th Cir. 2006) (holding that district court did not abuse its discretion in allowing layperson to describe the plaintiff's mental condition as "depressed" because though it does have a "medical definition, a reasonable jury can be expected to

9

understand the difference between lay use of an adjective and an expert's use of the same word to describe a specific psychological condition"); *Macon v. City of Fort Wayne*, 2012 U.S. Dist. LEXIS 121993, 22 (N.D. Ind. Aug. 28, 2012) (pastor could testify about observations about emotional distress and efforts to counsel plaintiff); *Frazier v. Ind. Dep't of Labor*, 2003 U.S. Dist. LEXIS 9067, 7 (S.D. Ind. Mar. 24, 2003) (stating that "the Plaintiff's lay witnesses may testify about their firsthand observations of his emotional distress and mental anguish and any physical manifestations attributed to such distress and anguish"); *see also United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008) ("We have held that lay opinion testimony regarding mental states is admissible under Rule 701.").

Mr. Stewardson or any of his witnesses may not testify or opine that the incidents of January 1, 2018 proximately caused Mr. Stewardson's mental and physical health problems or offer a medical diagnosis of his alleged injuries. *United States v. Cravens*, 275 F.3d 637, 640 (7th Cir. 2001) ("Although a lay person may readily observe a [health] problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision."); *Frazier*, 2003 U.S. Dist. LEXIS 9067, 8 ("[G]enerally, a lay opinion, whether from the Plaintiff himself or from his other non-expert witnesses about the cause of [physical injury,] emotional distress[,] or mental anguish . . . will not be admissible."); *see also Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms).

Mr. Stewardson and other lay witnesses may testify as to their perceptions, experiences, and observations of Mr. Stewardson before and after the incident to permit the jury to infer that his symptoms were caused by the incident. *See Hendrickson*, 589 F.3d at 892-93 (plaintiff may describe the altercation and any ensuing pain or suffering he experienced at that time and sometimes the cause of pain is "perfectly clear"); *Macon*, 2012 U.S. Dist. LEXIS 121993, 23 (finding that the plaintiff's lay testimony may "only lay the groundwork for the jury to infer" that his symptoms were caused by the alleged conduct);

*Schmelzer v. Muncy*, 2019 U.S. Dist. LEXIS 177193, 5 (S.D. Ill. Oct. 11, 2019) ("Circumstantial evidence can establish whether [the Plaintiff] had a brain injury before the collision.").

The testimony of Mr. Stewardson and lay witnesses cannot address the official medical diagnoses of Mr. Stewardson's alleged injuries or causation, outside of permissible Fed. R. Evid. 701 evidence. The court grants the motion as to defense issues J and K only as to causation and official medical diagnoses. The court must await the context of trial as to all other issues under Rules 701 and 702, so the parties may assert additional objections at trial as appropriate.

Mr. Stewardson asks the court to prohibit argument that an expert witness is required to prove damages, and the defense offers no contest and intends not to raise this issue, so the court counts this among the agreed issues (and grants the motion as to plaintiff's issue 5).

      F.     *Insurance Coverage Evidence (Defense Issue L).*

The defense asks the court to exclude evidence of insurance coverage or liability insurance. Mr. Stewardson argues he should be able to introduce this evidence because the defendants propose an instruction for the jury to consider the "defendant's financial condition" for punitive damages. *See* Federal Civil Jury Instructions of the Seventh Circuit 7.28 (including "Defendant's financial condition" as a factor to be considered in determining the amount of punitive damages, if evidence was admitted on that topic). This instruction would only relate to the claims against Deputies Titus and Biggs, in their individual capacities, as the Cass County Sheriff, in his official capacity, cannot be liable for punitive damages. *See* Ind. Code. § 34-13-3-4 ("a governmental entity or an employee of a governmental entity acting within the scope of employment is not liable for punitive damages").

At the final pretrial conference, the defense no longer was inclined to introduce evidence of financial conditions but hadn't made a definitive decision. Even if Deputies Titus and Biggs changed their mind, reference to insurance coverage is still not warranted because punitive damages are not covered by the Cass County public risk policy. Deputies Titus and Biggs will be personally liable for any

11

punitive damages, so evidence of their financial condition wouldn't open the door for argument on insurance coverage. The court grants the motion on defense issue L.

G. *Golden Rule Argument (Defense Issue N).*

The defense requests the court to exclude any "golden rule" argument. Mr. Stewardson generally agrees but contests that he may do so in *voir dire*. A golden rule appeal, in which "the jury is asked to put itself in the defendant's position[,] is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (citation and quotations omitted). Mr. Stewardson will be able to adequately engage in *voir dire* to detect bias without asking the panel to put itself in Mr. Stewardson's shoes, and the court will aid in crafting appropriate questions. The court grants the motion as to issue N.

H. *High-Profile Incidents of Police Misconduct and Delay in Trial (Defense Issues O, P, and Q,).*

The defense wants to exclude argument about certain topics: law enforcement sticking together behind a proverbial "blue wall," high-profile incidents of police misconduct, and any delay in getting to trial. The court takes each in turn.

First, the defense seeks to bar evidence regarding a "blue wall," "blue line," or "code of silence," or any generalized claim that jail officers bend the truth and lie for one another as a matter of course. The defense argues that such evidence is akin to prior bad acts evidence under Rule 404(b) and would also violate Rule 403. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). Overgeneralized allegations are just that—overgeneralized—and don't tend to reflect actual or arguable bias. Such allegations are not "helpful or relevant and are akin to impermissible propensity evidence"—apart from what may be true of the named defendants. *Norton v. Schmitz*, 2011 U.S. Dist. LEXIS 57950, 4-5 (N.D. Ill. May 27, 2011);

12

*Maldonado v. Stinar*, 2010 U.S. Dist. LEXIS 78983, 10-12 (N.D. Ill Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall").

Thus, the court grants and denies the motion as to issue O in part: (1) Mr. Stewardson may present evidence that Deputies Titus and Biggs stuck together, protected one another, or covered for one another—relevant to the conduct against Mr. Stewardson and whether either one acted out of bias or self-protection; (2) Mr. Stewardson may not use the terms "blue wall," "blue line," or "code of silence" as these terms are unduly prejudicial without probative value of particularized bias of these two officers; (3) Mr. Stewardson may not introduce evidence or argument that in analogy to high-profile incidents law enforcement officers generally cover up misconduct to protect fellow officers. To be clear, the court is not prohibiting Mr. Stewardson's ability to explore the possibility that defense witnesses are biased because of loyalty to one another or to cover up for one another.

Second, the defense seeks to exclude reference to high-profile incidents of law enforcement misconduct as they are irrelevant to the claims and reference to them would only "inflame the jury's emotions and obscure the issues in this case." *See* Fed. R. Evid. 401, 403. Mr. Stewardson argues that Rule 403 doesn't prevent prejudicial evidence but evidence that would be unfairly prejudicial. Mr. Stewardson jumps to weight balancing without arguing how this evidence is relevant and what its probative value may be. This evidence is marginally probative at best, and it is highly inflammatory and unfairly prejudicial. *See* Fed. R. Evid. 401, 403. Other incidents of law enforcement misconduct have no bearing on this particular case. The court grants the motion as to issue P.

Third, the defense seeks to prevent Mr. Stewardson from arguing that their conduct contributed to the length of this case's pendency. The request is granted as it has no tendency to make a fact more or less probable, nor is it of consequence in determining the action. *See* Fed. R. Evid. 401-402. It would have no probative value and only cause unfair prejudice. *See* Fed. R. Evid. 403. The court grants the motion as

to issue Q. This order does not prohibit Mr. Stewardson or other witnesses addressing the duration of his damages.

I.  *Reason for Arrest and Conduct with Arresting Officers (Plaintiff's Issue 1).*

Mr. Stewardson seeks to exclude evidence concerning his arrest that led to his detention: intoxication, drunk driving, and alleged combative behavior with the arresting officers. He argues this evidence would be unduly prejudicial (Rule 403), will be offered as propensity evidence (Rule 404), and because the defendants lacked knowledge of the traffic stop incidents (Rule 602).

Excessive force is assessed under an objective reasonableness standard. *Graham*, 490 U.S. at 395. The jury must analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident. *Id.* at 396-97. The "circumstances" mean 'only those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988). "Knowledge and facts gained after the fact . . . have no proper place in a court's or jury's analysis of the reasonableness of the actor's judgment." *Common v. City of Chi.*, 661 F.3d 940, 943 (7th Cir. 2011). Evaluating the reasonableness of an officer's actions, "the fact finder must do so with blinders on—viewing the circumstances and facts only as they were known to the officer at the time." *Id.* "[E]vidence outside of the time frame of the [incident] is irrelevant and prejudicial." *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997).

From representations at the final pretrial conference, there is limited evidence that Deputy Titus and Deputy Biggs knew about Mr. Stewardson's conduct with arresting officers. Of course, this information would be admissible to assess the reasonableness of their actions at the jail, and not merely propensity evidence.

The defense also argues the *Common* exceptions. The law permits a "peek under the blinders" in certain circumstances: (1) the credibility of a witness "can always be attacked by showing that his capacity

14

to observe, remember or narrate is impaired" and (2) a "witness could always be impeached by demonstrating contradictions in his testimony." *Common*, 661 F.3d at 943-44.

No one disputes that Mr. Stewardson was intoxicated during the events on January 1, 2018. He will admit it (he so testified in deposition). The officers knew he was intoxicated at the jail. That not just lessens the probative value of evidence of his intoxication at the scene of arrest but enhances the undue delay and cumulativeness that such evidence would cause at trial. *See* Fed. R. Evid. 403. It also illustrates that Mr. Stewardson's state of intoxication isn't a factual issue seriously in dispute to justify reaching back to the arrest scene. *See Common*, 661 F.3d at 943-44. Still, the defense may address the reason why officers brought Mr. Stewardson to the jail in custody—his intoxication bears on the case and gives context as to why the deputies interacted with him.

Whether Mr. Stewardson was combative and whether the deputies used excessive force remain controverted issues. The parties report that the video of this incident covers Mr. Stewardson's arrival in a squad car, his conduct before and after the portal, and his conduct inside the jail. The jury will likely be able to assess the circumstances of this incident largely from the video—and perhaps the best objective evidence of what occurred. *See generally Scott v. Harris*, 550 U.S. 372, 378-80 (2007); *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022). That does not render testimony of firsthand observations extraneous; indeed, such testimony may augment or explain the events otherwise seen on the video, but that testimony will come from officers or others at the jail that day. Events that transpired at the arrest scene, more distant in time, may have some marginal probative value, but not seemingly much in addressing whether Mr. Stewardson was resisting at the jail. Though at first blush it may seem that Rule 403 concerns might substantially outweigh this probative value, the court cannot say so under all circumstances and outside the context of trial, particularly when the deputies anticipate testifying to knowing certain information from the arrest scene. *See Jackson*, 535 F. Supp.3d at 813.

Accordingly, the court denies the motion as to plaintiff's issue 1 in favor of trial but anticipates a short leash under Rules 401-403.

J.     *Previously Disposed Claims (Plaintiff's Issue 4).*

Mr. Stewardson asks the court to exclude evidence of claims disposed of on summary judgment, namely the court's ruling that restraining a naked Mr. Stewardson to a chair wasn't unreasonable—and thus unconstitutional—considering the facts and circumstances. The defense seeks to use this as evidence that the jury shouldn't find for Mr. Stewardson on the remaining battery claim under the same theory. The court recognizes the elements for a Fourth Amendment excessive force claim and Indiana battery claim are materially the same; however, the court cannot backdoor an argument specifically excluded on summary judgment. The defense intentionally requested summary judgment on all claims "except for: (1) the federal excessive force claim asserted against Christopher Titus in his individual capacity; and (2) the state law assault and battery claims asserted against Sheriff Pryor in his official capacity (a/k/a the Cass County Sheriff's Office)" [ECF 101]. The defense cannot use the influence of the court's authority (via its prior ruling) to direct the jury to do what the defense didn't on summary judgment. The defense's "argument amounts to an untimely request for summary judgment." *Sunstar, Inc., v. Alberto-Culver Co.*, 2004 U.S. Dist. LEXIS 16855, 25 (N.D. Ill. Aug. 20, 2004). Accordingly, the court grants the motion as to plaintiff's issue 4.

## CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART the defense's motion *in limine*, granting the motion as to issues B, C, E, H, I, J, K, L, M, N, P, Q, and R, in part as to issues A, D, and O, and denying the motion as to issues F and G, in part as to issues A, D, and O [ECF 173]; and GRANTS IN PART and DENIES IN PART Mr. Stewardson's motion *in limine*, granting the motion as to issues 2, 3, 4, and 5 and denying the motion as to issue 1 [ECF 181].

Accordingly, the court ORDERS parties and their counsel not to offer at trial testimony, evidence, or argument before the jury concerning:

- the list of 31 undisclosed witnesses (Paul Michael Short through Marlon Medrano in the final pretrial order) (issue A);

- documents labeled "P14- Amended Affirmative Defenses" and "P16- Rule 34 Request for Inspection" (issue B);

- Deputy Biggs' alleged commission of assault and battery (issue C);

- the theory that officers violated the Fourth Amendment through a naked and restrained Mr. Stewardson or that doing so in a public hallway for punishment violated federal or state law (issues D and E);

- other instances of wrongdoing, cases, or lawsuits other than Mr. Stewardson's own and the defendants' prior interactions or incidents with other inmates as prior bad acts (issue H);

- alleged violations of written policies, procedures, or rules (issue I);

- causation and medical diagnoses requiring expert testimony (issues J and K);

- insurance coverage, indemnity, or an insurance policy (issue L);

- settlement negotiations (issue M);

- any "golden rule" argument (issue N);

- the terms "blue wall," "blue line," or "code of silence" (issue O);

- that law enforcement officers generally cover up misconduct to protect fellow officers in analogy to other high-profile incidents (issue O);

- high-profile incidents of alleged law enforcement misconduct (issue P);

- how the defense's conduct contributed to the length of the case's pendency (issue Q);

- withholding evidence or discovery (issue R).

- the use of the term "spit" (issue 2);

- Mr. Stewardson's possession of a knife (issue 3);

- the court's summary judgment order (issue 4); and

- that an expert witness is required to prove damages (issue 5).

SO ORDERED.

March 22, 2023									*s/ Damon R. Leichty*
											Judge, United States District Court